IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAX B.,[1]<br><br>　　Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　Defendant. | Case No. 3:22-CV-1432-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In accordance with 42 U.S.C. §405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## BACKGROUND

Plaintiff applied for DIB alleging an onset date of July 26, 2017. (Tr. 31). Plaintiff's claim was initially denied on October 11, 2018, and upon reconsideration on December 13, 2018 (Tr. 88-121). On January 30, 2019, Plaintiff filed a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 132). After holding an evidentiary hearing, an ALJ denied the application on June 3, 2020. (Tr. 51). The Appeals Council denied Plaintiff's request for review on October 30, 2020, making the ALJ's decision the final agency

---

[1] Plaintiff's full name will not be used due to privacy concerns. *See* FED. R. CIV. P. 5.2(c) and the Advisory Committee Notes thereto.

decision subject to judicial review. (Tr. 1-6). Plaintiff filed a timely complaint, and Magistrate Judge Reona J. Daly reversed and remanded on July 19, 2021. (Tr. 1364-1371).

The ALJ held an additional hearing in February 2022. (Tr. 1298-1323). The ALJ denied the application again in March 2022. (Tr. 1264-1288). Accordingly, Plaintiff exhausted administrative remedies and filed a timely complaint.

## ISSUE RAISED BY PLAINTIFF

Plaintiff raises the following issue:

> [T]he ALJ erred in relying on unreliable VE opinions that were obviously in conflict with public information from sources accepted by administrative notice and cited by the VE.

(Doc. 12, p. 4).

## LEGAL STANDARD

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently employed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform

his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. A negative answer at any step, other than at step three precludes a finding of disability. The claimant bears the burden of proof at steps one through four. Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v.*

*Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### I.     Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing on February 16, 2022. (Tr. 1298). The ALJ began by examining Plaintiff. Plaintiff explained that his physical conditions limit his ability to work. (Tr. 1303). Specifically, "the spinal stenosis with seven herniated discs and the neuropathy and tendonitis with the elbows and that stuff." (*Id*.). He explained that the pain goes "through [his] neck into [his] scapula down [his] back, sometimes into [his] hips and legs and then down both arms and causes complete numbness and change to tingling's so that [he] can't feel [his] hands and [his] arms sometimes." (*Id*.). After five minutes of sitting or standing, Plaintiff must change positions, or he will start experiencing numbness and tingling. (Tr. 1304-1305).

Besides his physical conditions, Plaintiff went into detail about his mental conditions[2] and incidents where he got into altercations with other individuals. (Tr. 1307-

---

[2] The ALJ found that Plaintiff has the following severe impairments: "bipolar disorder, persistent depressive disorder, post-traumatic stress disorder, anxiety, obsessive-compulsive disorder, panic disorder, attention-deficit hyperactivity disorder, mild neurocognitive disorder, learning disability in reading, and degenerative disc and degenerative joint disease of the cervical and

1310). In one of the altercations, Plaintiff threw an individual down a set of steps, struck the individual, threw the individual's head through a glass door, and threw the person out into the parking lot. (Tr. 1309-1310).

A vocational expert ("VE") also testified at the hearing. The ALJ asked him a hypothetical question that corresponded to the Residual Functional Capacity ("RFC") assessment—whether there would be work for an individual with the same age, education, and work experience as Plaintiff, but with the following limitations:

- never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl;

- work requiring no concentrated exposure to hazards, such as unprotected heights;

- work limited to simple tasks in a routine work environment and make simple, work-related decisions;

- work that is not at a fast pace such as on an assembly line but meet reasonable production requirements in an environment that allows for a flexible and goal oriented pace;

- work requiring no direct contact with the public and work primarily involving working with things rather than people; and

- work in proximity to but not coordination with coworkers.

(Tr. 1317-1318). The VE testified that there are approximately 700,000 medium hand packager jobs nationally, approximately 210,000 laundry worker jobs nationally, and 1.5 million medium material handler jobs nationally. (Tr. 1318). The ALJ also asked the VE about jobs for the light work category. (Tr. 1319). The VE testified there are

---

lumbar spine." (Tr. 1267).

approximately 900,000 light janitorial jobs nationally, approximately 400,000 light bakery worker jobs nationally, and approximately 640,000 light bottle packer jobs nationally. (*Id.*).

The ALJ also asked the VE about the tolerance for time off task in unskilled work. The VE answered, "[i]t'll vary by job and employer, but it would be less than 10% in any case." (Tr. 1320). As far as tolerance for absences, the VE noted, "[g]enerally not more than once a month, but not every month consecutively." (*Id.*).

Plaintiff's attorney asked the VE about the method used in estimating the job numbers. (Tr. 1321). The VE answered it was based on research by the Bureau of Labor Statistics. (*Id.*). After the hearing, Plaintiff's attorney reviewed the VE's hearing testimony and objected to the VE's opinions "as to job incidence data lack a reliable methodology." (Tr. 1505). Plaintiff's attorney argued, "[t]here is no specific confirmable methodology described in the record, and no evidence that the VE's methods for obtaining job incidence data are reliable and well-accepted, or why that is so." (*Id.*).

## II.     State Agency Consultants' Opinions

In October 2018, M. W. DiFonso, Psy.D. ("DiFonso") assessed Plaintiff's RFC based on a review of the record. (Tr. 88-100). DiFonso indicated that Plaintiff had moderate difficulties in interacting with others and in concentrating, persisting, and maintaining pace. (Tr. 94). DiFonso further indicated that Plaintiff had sustained concentration and persistence limitations. (Tr. 97). According to DiFonso, Plaintiff's ability to carry out

detailed instructions and maintain attention and concentration for extended periods was moderately limited. (*Id*.).

About two months later, Howard Tin, Psy.D, ("Tin"), the second state agency consultant, agreed with DiFonso's opinion. (Tr. 104-121). Tin noted that "[Plaintiff's] allegation of the severity of the disorder is not consistent with [Plaintiff's] ability to function generally well from day to day." (Tr. 118).

### DECISION OF THE ALJ

The ALJ followed a five-step sequential evaluation process for determining whether Plaintiff is disabled. She determined the Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 1267). The ALJ found that Plaintiff has the following severe impairments: "bipolar disorder, persistent depressive disorder, post-traumatic stress disorder, anxiety, obsessive-compulsive disorder, panic disorder, attention-deficit hyperactivity disorder, mild neurocognitive disorder, learning disability in reading, and degenerative disc and degenerative joint disease of the cervical and lumbar spine." (*Id*.).

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments within the meaning of the Social Security Act. (Tr. 1268). Thus, the ALJ found that Plaintiff had the RFC to perform light work, but with the following limitations:

- can never climb ladders, ropes, or scaffolds and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl;

- work requiring no concentrated exposure to hazards, such as unprotected heights;

- work limited to simple tasks in a routine work environment and make simple, work-related decisions;

- work that is not at a fast pace such as on an assembly line but meet reasonable production requirements in an environment that allows for a flexible and goal oriented pace;

- work requiring no direct contact with the public and work primarily involving working with things rather than people; and

- work in proximity to but not coordination with coworkers.

(Tr. 1271). The ALJ found that through the date last insured, Plaintiff was unable to perform any past relevant work. (Tr. 1285). In conclusion, based on the VE's testimony, the ALJ found that Plaintiff was not disabled because considering his age, education, work experience, and RFC, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 1286).

## DISCUSSION

Plaintiff argues the "ALJ accepted uncritically the VE's testimony that three jobs would be available given [his] limitations: janitorial (DOT 323.687-014, 900,000 jobs nationally); bakery worker (DOT 524.687-018, 400,000 jobs nationally); and bottle packer (DOT 920.685-026, 640,000 jobs nationally)." (Doc. 12, p. 7). According to Plaintiff, "[t]his was obviously flawed testimony, and the ALJ should never have accepted as reliable." (*Id.*). Plaintiff notes that "[t]he VE's cited source—'research by the Bureau of Labor Statistics' completely undermines her testimony." (*Id.*).

The Commissioner argues that "Plaintiff waived or forfeited his objection to the

[VE's] testimony." (Doc. 18, p. 8). According to the Commissioner, "[t]he Seventh Circuit's holding of waiver in *Coyier* [*v. Saul*, 860 F. App'x 426 (7th Cir. 2021)] is consistent with its other precedents, which have held that a claimant waives or forfeits any challenges to the vocational expert's testimony that are not raised at the administrative hearing." (*Id*. at p. 11) (citations omitted).

The Court agrees. In *Desotelle v. Kijakazi*, 2022 WL 409184 (E.D. Wis. Feb. 10, 2022), the plaintiff's counsel only made a non-specific objection to the VE's testimony prior to the hearing—and then asked the following two questions:

1) What is the source of the numbers that you've listed for these jobs?
2) What's the methodology that you use?

*Id*. at *5. When the VE offered her explanation, the plaintiff's counsel neither made an objection nor asked additional questions. *Id*.

The plaintiff in *Desotelle* argued that "because the ALJ has a duty at step five to ensure the reliability of the vocational testimony under *Chavez* [*v. Berryhill*, 895 F.3d 962 (7th Cir. 2018)], a plaintiff does not need to do anything to raise the issue on appeal in the district court." *Id*. at *6 (noting that "[i]n other words, [plaintiff] asserts that a represented claimant can stay completely silent as to the reliability of the VE's methodology during the administrative proceedings and then subsequently raise the issue before the district court").

The district court in *Desotelle* disagreed and discussed *Coyier*, quoting the following language:

> On appeal Coyier argues that at step five a claimant needs to object only to some aspect of the expert's method used to arrive at his job-number estimate to trigger the ALJ's duty to ensure the reliability of the VE's methodology. She claims that the ALJ erred by not scrutinizing the VE's methodology. *However, Coyier waived any challenge to the VE's testimony by failing to ask any questions to reveal shortcomings in the job-number estimates or to submit a supplemental brief on the issue despite assuring the court prior to and at the hearing that he would do so. These omissions effectively conceded the reliability of the VE's job numbers.*

*Id.* (quoting *Coyier*, 860 F. App'x at 427–28) (emphasis added). The plaintiff's counsel in *Desotelle* also argued that the "the Supreme Court's decision in *Carr v. Saul*, 141 S. Ct. 1352 (2021) stands for the proposition that given the nature of Social Security disability hearings, claimants need not raise *any* issue before the ALJ to preserve the issue on appeal." *Id.* The court in *Desotelle* quickly disposed of this argument by acknowledging the following:

> *Coyier* was decided subsequent to *Carr* and as such, the Seventh Circuit was presumably aware of the Court's decision. Furthermore, given *Carr's* narrow holding, it does not supersede the Seventh Circuit's rejection of [plaintiff's] argument in this case. As such, the ALJ did not err in relying on the VE's numbers in this case.

*Id.* at *7.

On appeal, the Seventh Circuit affirmed the court's ruling, noting the following:

> But when the claimant does not put the methodology at issue and the vocational expert's testimony is otherwise uncontradicted, the ALJ is entitled to credit the vocational expert's testimony. *Liskowitz*, 559 F.3d at 744. That's what happened here. *Desotelle did not challenge Wenkman's estimates at the hearing* (which for the jobs at issue, appear to be quite conservative), and the two questions about the expert's sources and methods did not "reveal any shortcomings in the vocational expert's data or reasoning" that need be addressed by the ALJ. *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002). Although the vocational expert could have more clearly explained her methods, *see generally Ruenger*, 23 F.4th at 764– 66 (Scudder, J., concurring), "the ALJ was entitled to reach the conclusion

she did." *Donahue*, 279 F.3d at 447.

*Desotelle v. Kijakazi*, 2023 WL 4146246, at *4 (7th Cir. June 23, 2023) (emphasis added).

About a month after *Desotelle*, the district court in *Leisgang v. Kijakazi*, 2022 WL 970151 (W.D. Wis. Mar. 31, 2022), was faced with a similar issue when a plaintiff "fail[ed] to object and develop an argument about the VE's estimates at the hearing before the ALJ." *Id*. at *8. In *Leisgang*, "[b]efore the hearing, plaintiff's counsel submitted a brief at the administrative level in which he made only a non-specific objection to the VE's expected job-numbers testimony." *Id*. At the hearing, the plaintiff's counsel asked these questions:

> Q: Okay. What sources do you utilize in order to estimate your job numbers?
>
> A: These are Occupational Employment Quarterly, First Quarter 2020 data.
>
> Q: Okay . . . What methodology does the Occupational Employment Quarterly utilize in order to estimate job numbers?
>
> A: It utilizes the equal distribution method over the 840 SSC jobs, categories.
>
> Q: The Bureau of Labor Statistics gathers the data by sending out classification codes, correct?
>
> A: That's correct.
>
> Q: Does the OEQ . . . break that down by Dictionary of Occupational Titles code or is that just something that you do based upon the number of codes, DOT codes that are within the particular SOC code?
>
> A: They do it.
>
> Q: Do you believe that to be a reliable method of estimating job numbers in the national economy?

> A: It's the only method I have available to myself.

*Id*. After this explanation, the plaintiff's counsel failed to make any objection.

The plaintiff in *Leisgang* "contend[ed] that counsel's questions at the hearing were sufficient to 'challenge' the reliability of the VE's testimony and trigger the ALJ's duty under *Chavez* to further question him about the reliability of his job numbers before accepting the testimony." *Id*. at *9 (noting that "[i]n plaintiff's view, he needed only to inquire 'about the numbers and the method' used by the VE in order to provoke further inquiry by the ALJ"). The court disagreed, finding that "[t]his argument, however, has already been made and rejected by this court and the Seventh Circuit." *Id*. (citing *Coyier*, 860 F. App'x 426). The court in *Leisgang* did not stop there, but instead acknowledged:

> Here, the ALJ did not offer counsel the opportunity to submit supplemental briefing after the hearing, but counsel never asked for one. *Indeed, although counsel's questions suggested that he was challenging the reliability of [the] [VE's] job numbers, he never made any specific objection or asked the ALJ to disregard the numbers for lack of reliability. All counsel did was establish that [the] [VE] had relied on the OEQ and confirmed that the OEQ relied on the equal distribution method*. As the Seventh Circuit made clear in *Coyier*, however, "*Chavez* did not enjoin the use of the equal-distribution method and created no new obligations at step five . . . the ALJ was entitled to accept an expert's testimony that was uncontradicted and otherwise proper[.]" *Coyier*, 860 F. App'x at 428 (internal quotations and citations omitted). *See also Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (explaining that an ALJ may properly accept a VE's uncontradicted testimony absent obvious internal conflicts).

*Id*. at *9 (emphasis added). The court then held that "[h]aving failed to identify any specific shortcomings in the VE's job-numbers estimates at the hearing, plaintiff cannot contest the reliability of those numbers now." *Id*.[3]

---

[3] The court in *Leisgang* also addressed the plaintiff's argument that the "Supreme Court held in *Carr v. Saul*, 141 S. Ct. 1352 (2021), that social security disability claimants need not raise an issue

On appeal, the Seventh Circuit affirmed the court's ruling, noting:

We require parties to object to issues and preserve arguments for a reason—first and foremost, to ensure that all sides develop the record they wish to subject to appellate review. *See Hacker v. Dart*, 62 F.4th 1073, 1082 (7th Cir. 2023).

Our case law is clear that this principle holds true in the Social Security context. *See Fetting*, 62 F.4th at 337–38; *see also Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) ("[The claimant] forfeited this argument by failing to object to the VE's testimony during the hearing."). As we explained in *Fetting*, a claimant must object to the VE's testimony or otherwise indicate that the testimony is unreliable during the administrative hearing (or after, in a posthearing brief) to preserve his objection. *See* 62 F.4th at 337. The claimant's objections, we emphasized, must also be specific enough to "indicate that [the claimant] believed the methodology was unreliable." *Id.* at 338. **General objections** or vague questions about the VE's methodology are, without more, insufficient. *See id.*

*Leisgang v. Kijakazi*, 2023 WL 4188500, at *2 (7th Cir. June 26, 2023) (emphasis added).

Not only did Plaintiff's counsel fail to object at the administrative hearing, but also counsel's later objection merely challenged the VE's testimony in three sentences—the same *general objection* made in *James G. v. Comm'r of Soc. Sec.*, 2022 WL 3369322, at *2 (S.D. Ill. Aug. 16, 2022). *See id.* (noting that "Plaintiff's attorney argued, '[t]here is no specific

---

before the ALJ to preserve it on appeal." *Id*. at *10. The court found that this argument fails for two reasons:

First, the Seventh Circuit decided *Coyier* after the Supreme Court decided *Carr*; presumably, the Seventh Circuit was aware of the Court's decision. Second, the Court made clear in *Carr* that it was considering whether to impose an issue-exhaustion requirement only "[i]n the specific context of petitioners' Appointments Clause challenges," 141 S. Ct. at 1360, and was *not* considering "the sphere of routine objections to individual benefits determinations" like the one plaintiff raises here.

*Id*.

confirmable methodology described in the record, and no evidence that the VE's methods for obtaining job incidence data are reliable and well-accepted, or why that is so'").

Like the plaintiffs in *Desotelle* and *Leisgang*, here Plaintiff's counsel never made a specific objection or asked the ALJ to disregard the numbers for lack of reliability at the February 2022 hearing. Distinguishing the facts in *Coyier*—and arguing *Coyier* is inapplicable—would ignore the overarching critical issue: a plaintiff waives any challenge to a VE's testimony by not asking any questions to reveal shortcomings in the job-number estimates or filing a supplemental brief on the issue with specific objections. Accordingly, this argument must be rejected.

## CONCLUSION

After careful review of the record as a whole, the Court finds that ALJ committed no errors of law, and her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**, and this action is **DISMISSED with prejudice**.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  July 11, 2023

                                                                      _____
                                                                      **NANCY J. ROSENSTENGEL**
                                                                      **Chief U.S. District Judge**